IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD WOMACK,

    Petitioner,                      No. CIV S-05-1159 FCD GGH P

    vs.

A.P. KANE, et al.,

    Respondents.              FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2004 petitioner plead guilty to infliction of corporal injury on a former cohabitant and to dissuading a witness by force or threat. In the instant petition, petitioner alleges that his plea agreement was violated and that he is entitled to enforcement of the plea agreement.

        After carefully reviewing the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

        The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle,

1

138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

1       The state courts need not have cited to federal authority, or even have indicated
2 awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.
3 Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is
4 contrary to, or an unreasonable application of, established Supreme Court authority. Id. An
5 unreasonable error is one in excess of even a reviewing court's perception that "clear error" has
6 occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the
7 established Supreme Court authority reviewed must be a pronouncement on constitutional
8 principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules
9 binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

10       However, where the state courts have not addressed the constitutional issue in
11 dispute in any reasoned opinion, the federal court will independently review the record in
12 adjudication of that issue. "Independent review of the record is not de novo review of the
13 constitutional issue, but rather, the only method by which we can determine whether a silent state
14 court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.
15 2003).

16       Petitioner raised the claim raised in the instant petition on direct review. On
17 December 7, 2004, the California Court of Appeal issued a reasoned opinion affirming
18 petitioner's conviction. Respondent's Lodged Document, APP.OPN. On March 4, 2005, the
19 California Supreme Court denied the petition for review without prejudice to the filing of a
20 petition for writ of habeas corpus regarding petitioner's entitlement to presentence custody
21 credits. Respondent's Lodged Document, CSC.ORD. When reviewing a state court's summary
22 denial of a claim, the court "looks through" the summary disposition to the last reasoned
23 decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).
24 III. Discussion

25       As discussed above, petitioner alleges that his plea agreement was violated and
26 that he is entitled to enforcement of the plea agreement. While the California Court of Appeal

found a breach of the plea agreement, it found that petitioner was not entitled to enforcement of the agreement:

> On April 1, 2003, defendant plead guilty to one count of corporal punishment on a former cohabitant (count 1) and one count of dissuading a witness by force or threat (count 2). He also admitted one prior strike (§ 667, subds. (b) - (I)). Defendant acknowledged he had read, understood and agreed that he might serve a maximum sentence of 10 years under the plea agreement. The trial court dismissed count 3 of the information and struck the three remaining strikes.
>
> At defendant's initial sentencing on June 2, 2003, the trial court denied probation and sentenced defendant to a total of eight years in prison consisting of: the middle term of six years on count 1, and one-third the middle term of six years on count 2, to be served consecutively. With respect to presentence credits, the probation report indicated defendant was on parole at the time of the current offense. It recounted the following conversation between the probation officer and parole officer: "The agent stated the defendant was last released on parole on September 24, 2000. The defendant's performance on parole has been 'poor,' and he has sustained two serious/violent violations. The agent stated the defendant's parole will be violated as a result of the instant case but not for issues surrounding this offense only. The defendant is also being violated for use of alcohol and absconding..." The probation officer stated that defendant was "not entitled to custody time credits pursuant to People v. Bruner [(1995) 9 Cal.4th 1178 (Bruner)]." At the June 2003 sentencing hearing, the probation officer informed the court there was a parole hold on defendant at the time of the instant offense. Therefore, the court denied presentence credit.
>
> Defendant filed a timely notice of appeal on June 19, 2003, in case No. CM016804 (C044372). Thereafter, the DOC alerted the trial court and counsel to what appeared to be errors in sentencing. The DOC noted that: 1) the sentencing range for conviction of section 273.5, subdivision (a) in count 1 was two, three or five years;[footnote] (2) the sentencing range
>
>> [The DOC is incorrect on this point. The sentencing range for conviction of section 273.5, subdivision (a) is two, three or four years. The two, four or five years range applies only where a defendant has suffered a prior conviction for an offense listed in section 273.5, subdivision (e), within the last seven years. Defendant admitted a May 1990 conviction for violating section 245, subdivision (a)(2).]
>
> for conviction of section 136.1, subdivision (c)(1) in count 2 was two, three or four years, making one-third the middle term equal to one year; and (3) the trial court failed to sentence defendant to a full, consecutive middle term in count 2 as required by section 1170.15. [Footnote omitted.]
>
> Appellate counsel moved to correct defendant's sentence and custody credits. At a hearing on March 8, 2004, the court resentenced defendant to a total of 12 years: the middle term of three years in count 1, doubled for the "strike," plus a full, consecutive, middle term of three years in count 2 pursuant to section 1170.5, doubled for the "strike." It again denied presentence credit, citing Bruner, supra,

4

9 Cal.4th at page 1191.

On March 11, 2004, defendant filed a second notice of appeal in case No. CM016804, which this court ordered lodged under the same appellate case number as the first notice of appeal, C044372.

DISCUSSION

I.

Defendant contends the 12-year term imposed at resentencing violated his plea agreement. Confirming on appeal that he does not want to withdraw his plea, defendant argues he is entitled to specific performance of the plea agreement–for a sentence that satisfies the terms of the plea agreement and the sentencing guidelines. He suggests a reasonable remedy would be to sentence him to the lower term of two years, doubled to four years, on count 1, and a full, consecutive, low term of two years, doubled to four years, on count 2, for a total of eight years, resulting in the same aggregate term given at his original sentencing.

We conclude the 12-year-sentence does violate the plea agreement. However, defendant's sole remedy is to withdraw his plea, which he declines to do.

It is the prosecutor's responsibility in a criminal action "to correctly advise, or make sure that the trial court correctly advises, the defendant of the permissible penalty scheme." (People v. Velasquez (1999) 69 Cal.App.4th 503, 507.) Moreover, "[t]he parties may not enter into a negotiated disposition, either by negligence or design, which specifies a sentence not authorized by law." (Id. at p. 505.) Here, it appears that at the time defendant agreed to the negotiated plea in April 2003, everyone overlooked the fact that section 1170.15 required the full, consecutive middle term in count 2.

Once defendant enters a guilty plea "in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement. The punishment may not significantly exceed that which the parties agreed upon." (People v. Walker (1991) 54 Cal.3d 1013, 1024; § 1192.5). We reject the People's claim that defendant did not "bargain" for a 10-year-cap on his sentence, and conclude the increase to a 12-year term at resentencing significantly exceeded the agreed upon term.

Remedies for breach of a plea agreement aim "to redress the harm caused by the violation without prejudicing either party or curtailing the normal sentencing discretion of the trial judge. The remedy chosen will vary depending on the circumstances of each case. Factors to be considered include who broke the bargain and whether the violation was deliberate or inadvertent, whether circumstances have changed between entry of the plea and the time of sentencing, and whether additional information has been obtained that, if not considered, would constrain the court to a disposition that it determines to be inappropriate. Due process does not compel that a particular remedy by applied in all cases." (People v. Mancheno (1982) 32 Cal.3d 855, 860 (Mancheno).)

5

> However, the preferred remedy for a breach of a plea agreement is to allow defendant to withdraw the plea. (People v. Calloway (1981) 29 Cal.3d 666, 671; People v. Kaanehe (1977) 19 Cal.3d 1, 13-14 (Kaanehe.) "Specific enforcement of a particular agreed [-] upon disposition must be strictly limited because it is not intended that a defendant and prosecutor be able to bind a trial court which is required to weigh the presentence report and exercise its customary sentencing discretion." (Kaanehe, supra, at p. 14.) Thus, "a defendant should not be entitled to enforce an agreement between himself and the prosecutor calling for a particular disposition against the trial court absent very special circumstances." (Id. at p. 13.)
>
> In Kaanehe, the Supreme Court rejected the People's request for specific performance where there was a "substantial possibility" that the remedy would "not completely repair the harm caused by the prosecutor's breach and when the breach was willful and deliberate..." (Kaanehe, supra, 19 Cal.3d at p. 14.) However, the Supreme Court found "very special circumstances" (id.at p. 13) in Mancheno, supra, 32 Cal.3d 855, where defendant's plea bargain incorporated his request for a diagnostic study by the DOC. (Mancheno, at p. 858.) The trial court sentenced defendant to four years in prison in accordance with the plea agreement but there was not mention of the term of the plea agreement calling for a diagnostic study. (Id. at p. 859.) On appeal, the Supreme Court explained that "[s]pecific enforcement is appropriate when it will implement the reasonable expectations of the parties without binding the trial judge to a disposition that he or she considers unsuitable under all the circumstances." (Id. at p. 861.) The Manchano court held that specific performance was appropriate because ordering the diagnostic study "would not bind the trial judge to a disposition that he considered inappropriate, nor otherwise impinge upon his sentencing discretion. Indeed, enforcement would promote informed exercise of that discretion by providing the judge with further information with which to make an appropriate sentencing decision." (Id. at p. 864.)
>
> Here, defendant cites no special circumstances to justify specific performance. Moreover, specific performance would improperly "bind[] the trial judge to a disposition that he or she considers unsuitable" under section 1170.15. (Mancheno, supra, 32 Cal.3d at p. 861.) Because defendant rejects the only available remedy by unequivocally declining to withdraw his plea, we shall affirm the 12 year sentence.

Respondent's Lodged Document, APP.OPN., pp. 3-9.

That petitioner's plea agreement was breached is undisputed. At issue is whether the state court applied the proper remedy for the breach.

Petitioner has two available remedies at law for breach of his plea agreement: withdrawal of his plea (i.e. rescission of the contract) and specific performance. Buckley v. Terhune, 441 F.3d 688, 699 (9th Cir. 2006); Brown v. Poole, 337 F.3d 1155, 1161 (9th Cir. 2003). In a case where the petitioner has already served all or almost all of his sentence, specific

6

performance is the appropriate remedy. Id. Specific performance is an available remedy in circumstances where the government's promise is either unfulfillable or contrary to law, as in the instant case. See Palermo v. Warden, Green Haven State Prison, 545 F.2d 286, 296 (2d Cir. 1976) (holding that "where a defendant relies on promises by the prosecutor which are in fact unfulfillable, he has a right to have those promises fulfilled); United States ex rel. Ferris v. Finkbeiner, 551 F.2d 185, 186-187 (7th Cir. 1977) (holding that fundamental fairness required limiting sentence to agreed upon term even though it resulted in a sentence not authorized under state law).

In Buckley, the Ninth Circuit declined to express a view on the proper remedy in a case where the petitioner had not served most or all of his sentence:

> As the California Supreme Court has held, the appropriate remedy in breach of plea agreement cases depends on the nature of the breach, which party (e.g., the defendant, the prosecutor or the trial court) has breached the agreement, and which party seeks enforcement of the contract. Kaanehe, 19 Cal.3d at 13, 136 Cal.Rptr. 409, 559 P.2d 1028. To that we would add, "and what has transpired since the agreement was made." Here, we hold only that in a case in which the state has already received the benefit of the bargain the harm caused by its breach is generally best repaired by specific performance of the plea agreement, although a defendant may, if he so chooses, elect to rescind the agreement and take his chances from there.

441 F.3d at 699 n. 11.

As respondent correctly observes, the issue here is different from that presented by the usual case, i.e., was there a breach of the plea agreement in a case where the state courts have not found such. In those cases, where the federal habeas court, under appropriate standards, disagrees, the remedy is an afterthought to the issues in the case. Buckley is such a case. Brown involved not only a disputed plea agreement, but also a remedy situation where the petitioner had expended all of the bargained time (as the Ninth Circuit saw it) in prison, so that recision was an impossibility. In this case, all agree there was a breach of the plea agreement, and the issue is whether the AEDPA deference standards apply to the remedy chosen by the state courts. The undersigned sees no reason why AEDPA would not apply; the issue of remedy is as legal an

issue entitled to deference as is the initial issue of whether the plea was breached.  There is no "remedy" exclusion in AEDPA.  It may well be that the federal courts are powerless to review the remedy determined by the state courts unless the United States Supreme Court has established clear law on what the remedy in a certain situation must be.  While the Supreme Court has outlined what possible remedies there may be, see Santobello v. New York, 404 U.S. 257, 262-263, 92 S.Ct. 495, 499 (1971), the undersigned is unaware that the Supreme Court has mandated any particular remedy for a particular situation.[1]  See Mabry v. Johnson, 467 U.S. 504, 510 (n.11), 104 S.Ct. 2543 (1984) (recognizing that Santobello did not hold "that the Constitution compels specific performance of a broken prosecutorial promise.")

Therefore, the undersigned first finds that no Supreme Court authority exists which would permit this court to hold that the state appellate court was unreasonable in declining to order specific performance, and instead giving petitioner the option of withdrawing his plea.

Even if the Ninth Circuit cases cited above could be construed as AEDPA authority on the required remedy, the result does not change.

In the instant case, petitioner has not served a substantial portion of his original ten year sentence.  At the time he filed the petition in this action, he had served less than two years.  Based on these circumstances, the court does not find that the state appellate court's determination that the appropriate remedy was to permit petitioner to withdraw his plea was contrary to the Ninth Circuit cases.  Because petitioner rejected this remedy, this court does not review the state appellate court's decision to affirm the 12 year sentence.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

---

[1] Indeed, in Santebello the matter of remedy was reserved to the state courts on remand.

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/17/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
wom1159.157